## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT L. LONGO JR.,   :  Civil No. 3:22-cv-1207
          :
   Petitioner   :  (Judge Mariani)
          :
 v.        :
          :
SUPERINTENDENT LAUREL HARRY, :
PENNSYLVANIA ATTORNEY GENERAL,:
          :
   Respondents  :

## MEMORANDUM

Petitioner Robert Longo ("Longo") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), seeking relief from a sentence entered in the Court of Common Pleas of Snyder County, Pennsylvania, on February 8, 2018, in criminal case CP-55-CR-0000404-2016, following his November 28, 2017 conviction of stalking and intimidation of a witness.  The petition is ripe for disposition.  For the reasons discussed below, the Court will deny the petition.

## I. State Court Factual Background & Procedural History[1]

On November 28, 2017, a jury convicted Longo of one count of intimidation of a witness and two counts of stalking.  *Commonwealth v. Longo*, No. CP-55-CR-0000404-

---

[1] A federal habeas court may take judicial notice of state court records.  *Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets in the Court of Common Pleas of Snyder County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

2016 (Pa. Ct. Com. Pl. Snyder Cnty.).   The victim of the crimes was Longo's ex-wife, Alicia

Durkin.   *See Commonwealth v. Longo*, 2022 WL 3011385, at *1, n.1 (Pa. Super. July 29,

2022), *appeal denied*, 291 A.3d 862 (Pa. 2023).   Longo sent his ex-wife threatening letters

from prison and, once released, he sent her threatening emails which he signed with the

pseudonym "Anthony Falcone."   *See id.*   On February 8, 2018, the trial court sentenced

Longo to concurrent terms of incarceration of 14 months to 5 years for the stalking

convictions and a consecutive term of incarceration of 16 months to 7 years for the

intimidation of a witness conviction.   *See Commonwealth v. Longo*, No. CP-55-CR-

0000404-2016.

Longo filed a direct appeal challenging the admission of certain evidence over his

hearsay and authentication objections.   *See Commonwealth v. Longo*, 2022 WL 3011385,

at *1.   On December 12, 2018, the Pennsylvania Superior Court affirmed the judgment of

sentence, finding that Longo had waived his issue on appeal by failing to adequately

develop it in his appellate brief.   *See id.*; *see also Commonwealth v. Longo*, 203 A.3d 309

(Pa. Super. Dec. 12, 2018) (unpublished memorandum), *appeal denied*, 217 A.3d 213 (Pa.

2019).   Longo filed a petition for allowance of appeal with the Pennsylvania Supreme Court,

which was denied on August 26, 2019.   *Commonwealth v. Longo*, 217 A.3d 213 (Pa. 2019).

On July 5, 2019, Longo filed a *pro se* petition for post-conviction collateral relief

pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46.   *See*

*Commonwealth v. Longo*, 2022 WL 3011385, at *1.   The PCRA court appointed counsel for

Longo—Jeana A. Longo, Esquire—who filed an amended PCRA petition arguing that Longo's trial counsel (Michael O'Donnell, Esquire) was ineffective for not objecting to the Commonwealth's closing argument, failing to object to venue, and waiving Longo's claims on appeal by filing a deficient brief. *See id.* Following a hearing, the PCRA court reinstated Longo's direct appeal rights *nunc pro tunc*. *See id.* Longo then filed a notice of appeal *nunc pro tunc* claiming that he was deprived the right to a fair trial when the Commonwealth implied in its closing argument that Longo had the burden of proof, and that the trial court erred in admitting as evidence emails that were not properly authenticated. *See id.* On June 23, 2020, the Pennsylvania Superior Court affirmed the judgment of sentence and found that Longo waived his claim that the Commonwealth's statement violated his right to a fair trial by not lodging a contemporaneous objection to it or seeking any curative instruction, and that the trial court did not abuse its discretion in admitting the emails into evidence. *See id.*; *see also Commonwealth v. Longo*, 2020 WL 3441247 at *2, *5 (Pa. Super. June 23, 2020), *appeal denied*, 240 A.3d 101 (Pa. 2020).

On February 4, 2021, Longo filed a *pro se* PCRA petition. *See Commonwealth v. Longo*, 2022 WL 3011385, at *2. The PCRA court appointed Brian W. Ulmer, Esquire, who filed an amended PCRA petition. *See id.* In the amended petition, Longo claimed that his trial counsel was ineffective for failing to "preserve multiple objections to testimony at trial regarding hearsay statements of his father" and that Attorney Jeana Longo (his first PCRA counsel and counsel on direct appeal after his direct appeal rights were reinstated) was

ineffective because she "failed to preserve the issue through PCRA and appeal." *See id.*

Longo also asserted that Attorney Jeana Longo was ineffective because she failed to raise

on direct appeal his claim that the Commonwealth improperly implied in its closing argument

that Longo had the burden of proving his innocence. *See id.* Following a hearing, the

PCRA court dismissed Longo's claims as meritless. *See id.* Longo filed an appeal to the

Pennsylvania Superior Court raising ineffective assistance of counsel claims, a claim

regarding alleged hearsay, and a claim regarding the denial of constitutional rights arising

from the prosecutor's closing statement. *See Commonwealth v. Longo*, No. 1591 MDA

2021 (Pa. Super. 2021). On July 29, 2022, the Pennsylvania Superior Court found that the

claims were not adequately developed for appellate review and, thus, waived. *See*

*Commonwealth v. Longo*, 2022 WL 3011385, *appeal denied*, 291 A.3d 862 (Pa. 2023).

Longo filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which

was denied on January 24, 2023. *Commonwealth v. Longo*, 291 A.3d 862 (Pa. 2023).

Longo then filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §

2254. (Doc. 1).

## II.  Habeas Claims Presented for Federal Review

Longo seeks federal review of the following issues:

- Ground One: Prosecutorial Misconduct

- Ground Two: Ineffective Assistance of Counsel

- Ground Three: Use of Inadmissible Hearsay to Authenticate Evidence

4

- Ground Four: Use of Inadmissible Hearsay of Witnesses that were not Present at Trial

(Doc. 1).

### III.  <u>Legal Standards</u>

#### A.  **Exhaustion and Procedural Default**

Before the federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirement of section 2254(b), which requires a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting the claim. *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). It also requires the petitioner to preserve each claim at the state appellate level. *See Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing *O'Sullivan*, 526 U.S. at 844-45). The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In

addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at…trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496).

This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  In other words, a petitioner must present new, reliable evidence of factual innocence.  *Schlup*, 513 U.S. at 324.

### B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301

F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)(3)).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### C.   Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This right to effective assistance of counsel also extends to the first appeal.  *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel.  *Strickland*, 466 U.S. at 687-88.  A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice.  *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct.  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

9

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

10

IV.   **Discussion**

A.     **Ground One—Prosecutorial Misconduct**

Longo first alleges prosecutorial misconduct; specifically, that the Commonwealth improperly suggested that he had the burden to produce a witness, T.J. Falcone.  In affirming the judgment of sentence (after Longo's direct appeal rights were reinstated *nunc pro tunc*), the Superior Court addressed this issue and concluded that the claim was waived.  *Commonwealth v. Longo*, 2020 WL 3441247.  The Superior Court found as follows:

> In his first issue, Appellant contends the prosecutor's closing argument improperly implied that Appellant bore the burden of proof at trial.  Appellant emphasizes the following comment from the prosecutor: "There's no Anthony Falcone.  [Appellant] had the opportunity to bring that guy here today but no, he's not going to…."  (Appellant's Brief at 12) (quoting N.T. Trial, 11/28/17, at 194-95).  Appellant insists this comment misled the jury into thinking that Appellant had the burden of presenting "Anthony Falcone" as a witness, and Appellant failed to satisfy that burden.  Appellant concludes the prosecutor's closing argument violated his due process rights, and he is entitled to a new trial.  We disagree.
>
> As a prefatory matter, "the lack of a contemporaneous objection constitutes a waiver of any challenge to the prosecutor's closing remarks."  *Commonwealth v. Rivera*, 603 Pa. 340, 370, 983 A.2d 1211, 1229 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010).  *See also* Pa.R.A.P. 302(a) (providing general rule that issues not raised in trial court are waived and cannot be raised for first time on appeal).  Here, Appellant did not object to the prosecutor's closing argument or seek any type of curative instruction.  Consequently, Appellant's claim is waived in this appeal.

*Commonwealth v. Longo*, 2020 WL 3441247, at *2 (footnote omitted).

When the state court does not address the merits of a claim because the petitioner failed to follow the state's procedural rules in presenting the claims, the claim will be considered procedurally defaulted if the rule upon which the state court relied is independent of the constitutional issue and adequate to support the decision. *Maples v. Thomas*, 566 U.S. 266, 280 (2012); *Harris v. Reed*, 489 U.S. 255, 260 (1989). "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and the rule "speaks in unmistakable terms." *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996) (*abrogated on other grounds by Beard v. Kindler*, 558 U.S. 53 (2009)). Thus, the procedural disposition must comport with similar decisions in other cases such that there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases." *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989)).

Here, the default is based on the Superior Court's finding of waiver, specifically Longo's failure to object to the prosecutor's closing argument or seek any type of curative instruction. *Commonwealth v. Longo*, 2020 WL 3441247, at *2. Pennsylvania Rule of Appellate Procedure states, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." PA. R. APP. P. 302(a). Pennsylvania Appellate Rule 302(a) is an independent and adequate basis to support a procedural default. *See Thomas v. Sec'y Pa. Dep't of Corr.*, 495 F. App'x 200, 206 (3d Cir. 2012) (not precedential) (finding

that the waiver ruling by the Pennsylvania Superior Court was independent and adequate,

supporting default); *Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011) (finding

petitioner's claim defaulted under Rule 302(a). As a result of the state court's finding that

this claim was waived, which was based upon an independent and adequate state ground,

the claim is procedurally defaulted. *See Werts*, 228 F.3d at 194. Longo fails to allege, as is

his burden, the existence of either cause or prejudice for the procedural default and none

appears on the record. Neither does it appear that a miscarriage of justice would occur.

Accordingly, habeas review of this claim is foreclosed.

### B.      Ground Two—Ineffective Assistance of Counsel

Longo presented his ineffective assistance of counsel claims in PCRA proceedings,

and the Superior Court found the claims waived. *Commonwealth v. Longo*, 2022 WL

3011385. In its July 29, 2022 opinion, the Superior Court found as follows:

> As an initial matter, we must determine whether Appellant has sufficiently
> developed his ineffective assistance of counsel claims for appellate review.
> Appellate briefs "must conform to the requirements of the Pennsylvania Rules
> of Appellate Procedure" and this Court may dismiss or quash an appeal if the
> defect in the brief is substantial. *Commonwealth v. Adams*, 882 A.2d 496,
> 497-98 (Pa. Super. 2005). *See also* Pa.R.A.P. 2111-2119 (discussing
> required content of appellate briefs and addressing specific requirements of
> each subsection of brief on appeal).
>
> Here, Appellant has included citation to boilerplate case law pertaining to our
> standard of review of PCRA court orders and the elements of an ineffective
> assistance of counsel claim. He has not, however, provided citation to any
> relevant authority regarding hearsay or the denial of constitutional rights
> arising from a prosecutor's closing statement. *See* Pa.R.A.P. 2119(a)
> (requiring, *inter alia*, discussion and citation or pertinent authorities). *See also*
> *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (stating that it

is an appellant's duty when briefing issues to present arguments that are sufficiently developed with pertinent discussion, references to the record, and citations to legal authorities).  Moreover, with respect to his claim arising from alleged hearsay testimony, Appellant has failed to identify who offered the offending testimony and the contents of the testimony, and has not cited to the place in the notes of testimony from his trial where this testimony is located as required by Pa.R.A.P. 2119(c).  With respect to his claim that the Commonwealth's closing statement violated his constitutional rights, Appellant has similarly failed to include in his Brief the contents of the statement or citation to the notes of testimony where the statement occurred. *Id.*

Because Appellant's claims are not adequately developed so as to permit appellate review, they are waived.  *See Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (stating that "arguments which are not appropriately developed are waived.") (citation omitted); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Order affirmed.

*Commonwealth v. Longo*, 2022 WL 3011385, at *2-3.

It is clear that Longo waived his ineffective assistance of counsel claims under state law, as determined by the Pennsylvania Superior Court.  These claims are thereby defaulted.  *See Coleman*, 501 U.S. at 750; *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (concluding, "if the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed").  Longo's failure to properly pursue these claims at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of the claim.  *See Barnhart v. Kyler*,

318 F. Supp.2d 250 (M.D. Pa. 2004). Longo is not entitled to federal habeas review of these claims unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015). Longo fails to acknowledge his procedural default of these claims and fails to allege any cause and prejudice to excuse it. (*See* Doc. 1; *see also Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal habeas review of a defaulted claim)). Nor is there any indication that a failure to review these claims will result in a fundamental miscarriage of justice. Consequently, Longo is precluded from pursuing federal habeas corpus relief regarding Ground Two.

## C. Grounds Three and Four—Use of Alleged Inadmissible Hearsay

Longo next alleges that the trial court erred by allowing the admission of emails that were not properly authenticated. On direct appeal (after the PCRA court reinstated Longo's direct appeal rights *nunc pro tunc*), the Superior Court found that the trial court did not abuse its discretion by admitting the emails into evidence and stated as follows:

> In his second issue, Appellant asserts a party seeking to admit evidence of electronic communications, such as emails, must properly authenticate the evidence before a court may admit it. Appellant argues the Commonwealth failed to properly authenticate the emails sent from the "Anthony Falcone" account to Alicia and Kathleen Durkin, because it did not present evidence to show that the emails were actually sent from the cell phone that police recovered from Appellant. Appellant relies on *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), for the proposition that a person's physical

proximity to a cell phone is not probative of whether that person authored electronic communications sent from that cell phone.  Further, Appellant insists the Commonwealth failed to prove that he created the "TJFalcone" email account.  Absent proper authentication of the emails at issue, Appellant concludes the trial court abused its discretion by admitting the emails into evidence.  We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court…[and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion.  An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.  [I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa. Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015) (internal citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence."  *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact.  Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. 2019), *appeal denied*, ⸺ Pa. ⸺, 219 A.3d 597 (2019) (internal quotation marks omitted).

Pennsylvania Rule of Evidence 901 governs the authentication of evidence as follows:

Rule 901.  Authenticating or Identifying Evidence

(a) In General. Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only—not a complete list—of evidence that satisfies the requirement:

(1) *Testimony of a Witness with Knowledge*.  Testimony that an item is what it is claimed to be.

* * *

(4) *Distinctive Characteristics and the Like*.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Pa.R.E. 901(a), (b)(1), (4).

"[E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally." *Koch*, supra at 1004[]. *See also Danzey*, supra at 337-38, (explaining Pennsylvania appellate courts have also considered authentication of computerized instant messages and communications made on Facebook and other social media platforms).

A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting.  A document also may be

authenticated by circumstantial evidence, a practice which is
uniformly recognized as permissible.

* * *

[T]he difficulty that frequently arises in e-mail and text message
cases is establishing authorship.  Often more than one person uses
an e-mail address and accounts can be accessed without
permission.  In the majority of courts to have considered the
question, the mere fact that an e-mail bears a particular e-mail
address is inadequate to authenticate the identity of the author;
typically, courts demand additional evidence.

*Koch*, *supra* at 1004[] (internal citations and quotation marks omitted).

Instantly, Alicia Durkin testified that Appellant had manipulated her with
threats of violence during their marriage.  (*See* N.T. Trial at 100).  Specifically,
Appellant claimed to have a cousin named "Anthony Falcone."  (*Id.*)
Appellant insisted that Anthony was a member of the mafia, and Anthony
would do harm to Alicia or her family if Alicia ever told anyone about
Appellant's misconduct.  (*Id.*)

Fearing that Anthony might harm her or her family, Alicia Durkin contacted
Appellant's father to ask whether Anthony actually existed.  (*Id.* at 101).
Alicia's mother, Kathleen Durkin, was present for Alicia's conversation with
Appellant's father.  (*Id.* at 53).  Significantly, Appellant's father denied that
Appellant has a cousin named Anthony.  (*Id.* at 53-54, 101).

The Commonwealth also introduced several emails sent from the "TJFalcone"
email account to Alicia and Kathleen Durkin.  Alicia Durkin began receiving
the emails on September 16, 2016, a few days after Appellant was released
from jail.  (*Id.* at 120, 140).  Even though the emails came from the
"TJFalcone" account, Alicia Durkin testified that the content of the messages
"looked like stuff [Appellant would] say" in prior letters he sent to her.  (*Id.* at
128, 137).  Alicia Durkin also explained that Appellant had a penchant for
creating alter egos to express different aspects of his personality and to
further his ambition of becoming a professional wrestler.  (*Id.* at 104-05).

Additionally, Kathleen Durkin explained that Alicia Durkin began forwarding
the emails to her.  Kathleen Durkin would read the forwarded emails, because
Alicia Durkin "didn't want to look at them."  (*Id.* at 51).  Kathleen Durkin

immediately concluded that "Anthony Falcone" did not exist, as was apparent from the prior conversation with Appellant's father.  Kathleen Durkin posited that the emails from "Anthony Falcone" were authored by Appellant as a way "to make the fear factor stronger" for his prior threats to Alicia Durkin.  (*Id.* at 145).

Selinsgrove Police Officer Francis Petrovich testified that he obtained a warrant to examine the contents of the cell phones that the probation department recovered from Appellant.  Officer Petrovich "did see the e-mail account set up on one of the phones back to this TJFalconeMafia1@gmail.com." (*Id.* at 87).  Officer Petrovich elaborated on his investigation during the following exchange on cross-examination:

> [COUNSEL]: Officer Petrovich, there [were] two phones, is that correct?
>
> [WITNESS]: Yes there was.
>
> [COUNSEL]: And which phone sent the e-mails?
>
> [WITNESS]: I would have to recall back [sic] to my report.
>
> [COUNSEL]: But you can be able to tell which phone sent those e-mails, right?
>
> [WITNESS]: One of the two phones recovered by probation.
>
> * * *
>
> [COUNSEL]: You could tell that that e-mail was written on that phone and sent?
>
> [WITNESS]: Yes out of one of the two phones, correct.

(*Id.* at 88-89).

Although Appellant objected to the Commonwealth's authentication of the emails, the trial court determined that the Commonwealth properly established that Appellant sent the emails using the "TJFalcone" account. (*See* Trial Court Opinion at 4).  We agree that sufficient circumstantial

evidence supported the court's decision, including testimony that: 1) the content of the emails was similar to that of other letters Alicia Durkin had received from Appellant; 2) Appellant's father said that Appellant did not have a cousin named Anthony Falcone; 3) Appellant had a penchant for creating alter egos; and 4) police connected the emails to the account on Appellant's cell phone. *Compare Koch*, *supra* at 1005 (emphasizing detective's testimony regarding his transcription of text messages from defendant's cell phone was insufficient to authenticate defendant as author; Commonwealth did not present testimony from persons who received messages, and messages did not include context clues tending to reveal sender's identity). Under these circumstances, the trial court did not abuse its discretion by admitting Appellant's emails into evidence. *See Belknap*, *supra*. Accordingly, we affirm the judgment of sentence.

*Commonwealth v. Longo*, 2020 WL 3441247, at *3-5 (footnote omitted).

Generally, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal courts must afford the states deference in its determinations regarding evidence and procedure. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional

dimension." *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir.1997) (citation omitted), *cert. denied*, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." *Hutchins v. Hundley*, No. 91-818, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991) (citation omitted); *see also Kontakis v. Beyer,* 19 F.3d 110, 120 (3d Cir. 1994), *cert. denied*, 513 U.S. 881 (1994); *Lisenba v. California*, 314 U.S. 219, 228, 236 (1941) (holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law"). *See also United States v. Agurs*, 427 U.S. 97, 108 (1976) (for a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial).

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." *Hutchins*, 1991 WL 167036 at *4 (citing *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989), *cert. denied*, 496 U.S. 939 (1990)).

The Supreme Court further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or

denies it altogether." *Hutchins*, 1991 WL 167036 at *5 (citing *Rose v. Clark*, 478 U.S. 570, 578 n. 6 (1986)).

Here, the Court finds that the state court's evidentiary ruling with respect to the emails did not violate Longo's right to due process. The Superior Court found that the following circumstantial evidence was sufficient to support the trial court's decision: (1) the content of the emails was similar to that of other letters Longo's wife had received from him; (2) Longo's father said that Longo did not have a cousin named Anthony; (3) Longo was inclined to create alter egos; and (4) police connected the emails to the account on Longo's cell phone. (*See* Doc. 16-4, pp. 51-54, 87-88, 100-101; Doc. 16-5, pp. 1-2, 20, 40, 24, 28, 36-37). Thus, under the state court rules of evidence, the emails were properly admitted into evidence. There is nothing to show that this evidentiary ruling constituted an error of constitutional dimension. Also, a review of the entire record demonstrates that the trial process was fundamentally fair. Accordingly, Longo is not entitled to relief on this ground.

To the extent that Longo believes his constitutional rights were violated because he was not able to confront witnesses to authenticate testimony and emails, this claim is defaulted. *See Coleman*, 501 U.S. at 750; *Sistrunk*, 96 F.3d at 673 (3d Cir. 1996). In reviewing the record, the Court notes that this claim was waived in state court and not properly presented to the state courts. *See Commonwealth v. Longo*, 2018 WL 6520445 (Pa. Super. Dec. 12, 2018). Longo's failure to properly pursue this claim at the state level constitutes an independent and adequate state ground sufficient to support a procedural

default of the claim.  Once again, Longo cannot excuse the default as he has not alleged

cause and prejudice or a fundamental miscarriage of justice.  Federal review is therefore

precluded.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate

of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial

showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.  As the

Supreme Court has explained,

> "[w]hen the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, a COA should
> issue when the prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it debatable whether
> the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Longo failed to demonstrate that a certificate

of appealability should issue.

**VI.**   **Conclusion**

The Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: March 21, 2024